On 20 October, 1817, the testator added a codicil to this will, whereby, after reciting that his daughter, Lucy Daniel, had died, he annulled that part of his will whereby John Daniel was authorized to receive the share of his property bequeathed to the children of the said Lucy, (201) and appointed his sons, Alexander and Archibald D. Murphy, and his son-in-law, John McAden, the defendant, in his stead and in that behalf; and directed that they, or the survivor of them, should hold the same, as trustees for the aforesaid children, under the *Page 163 
same rules and regulations as the aforesaid devises are made in his said will. By the codicil, the testator also devised to his son John G. a tract of land on Bradley's Lick Creek, of Stone's River, in trust for his, the said John's children, to be valued by three commissioners, to be appointed by the County Court; and the amount of the valuation to be deemed a part of their distributive share. The codicil concluded, "Lastly, in addition to the executors named in my last will, I hereby nominate my said son-in-law, Dr. John McAden, one of my executors, to cooperate with my sons, Alexander and Archibald D., in executing the same."
Shortly after, the testator died, and the aforesaid will and codicil were duly proved by Alexander and Archibald D. Murphy and John McAden, who qualified as executors thereto. The present bill was filed by Jonathan Worth and Matilda, his wife, and Lucy Ann Daniel, an infant, suing by her next friend, against the said John McAden, and John M. Daniel and James M. Daniel. Lucy Ann Daniel afterwards intermarried with Harvey J. Baldwin, and he and his said wife were made parties complainants. The bill charged that Lucy Daniel left five children; that is to say, the plaintiff Matilda, who had, since the death of her mother, intermarried with the plaintiff Jonathan Worth; the plaintiff Lucy Ann; the defendants John M. Daniel and James M. Daniel, and Archibald A. Daniel, who had died under the age of twenty-one years without issue; that the executors took into their possession and sold the personal property of their testator to the amount of $16,959.24, and sold lands to a very large amount; that Alexander and Archibald D. Murphy were both dead, and were insolvent long before their deaths; and that the defendant Dr. McAden was the surviving executor and trustee; and that they had required from him an account and the payment or securing of the payment of their portions of the share given by the will to the children of Lucy Daniel. The bill set (202) forth that this account had been refused upon several pretenses, which the plaintiffs alleged to be untrue and insufficient; that it was pretended that he, the defendant John McAden, received no money as the proceeds of his testator's effects, except the share of his own children; whereas the plaintiffs charged that he received a much larger amount, and particularly that he bought, himself, to a large amount, at the sales of his testator's estate; that he received $800 from William Oliver on account of a negro man purchased at the sales aforesaid; and that Mrs. Jane Murphy, the widow, purchased to a considerable amount at the said sales; that she died indebted on account of these purchases; that he administered on her estate, received assets abundantly sufficient to discharge the debt, and actually paid over the amount of the debt to his coexecutor, Archibald D. Murphy. They also charged that he *Page 164 
exercised dominion over the whole estate, and was actively engaged in the sales thereof; that the said sales of the personal estate were made without an order of court authorizing the same, and, therefore, all and every of the executors joining therein were and was responsible for any loss, of whatever kind, thereby occasioned; that at the said sales, each of the executors, Archibald D. and Alexander Murphy, was allowed to purchase to a great amount, and gave no security; and that these sums had either been paid to him or had been lost, because of his neglect and misconduct; that of the sales of the real estate, $6,385 were for a tract purchased by Archibald D. Murphy from the defendant and his coexecutor, Alexander Murphy, for which no security was given, and that this sum had either been collected by him or had been lost through his negligence. They also charged that large sales had been made of the western lands, the proceeds of which had either been collected by him or lost through his negligence; and that considerable portions yet remained unsold, and that he refused to make sale thereof; and they insisted that the defendant was a trustee, under the will, for the making sale of (203) these lands. They further charged that Archibald D. Murphy became insolvent in the year 1820; that the defendant knew this fact, and the danger of permitting him to keep the funds of the testator in his hands; but not only made no effort to withdraw them out of his hands, or to secure them, but permitted him to go on and receive moneys upon them, and in 1827 paid over to him the debt due from Mrs. Jane Murphy's estate; that if proper efforts had been made by him, the amount to which the children of Lucy Daniel were entitled might have been secured, notwithstanding such insolvency; for in the year 1827 he received from the said Archibald $2,584, which he claimed unjustly to retain wholly as trustee for his own children. The bill further charged that the land on Bradley's Lick Creek, given by the codicil to the children of John G. Murphy, had been valued pursuant to its directions, and insisted that the amount of that valuation should be added to the fund, out of which the plaintiffs were to take their parts. The plaintiffs prayed that the defendant might be directed to account for the administration of the assets of his testator and for the performance of the trusts confided to him, to pay unto the plaintiffs Worth and wife, and to secure to the plaintiff Lucy what might be found due to them, and for general relief.
All the defendants answered the bill. The defendants John M. Daniel and James M. Daniel, by their answers, admitted all the matters therein charged, and prayed not only that their interests might be protected, but that they might have a decree for what was due them. The defendant John McAden insisted that, under his appointment as executor, with Alexander and Archibald D. Murphy, he had no authority whatever over *Page 165 
the freehold estate of the testator during their lives or that of Archibald, the survivor; and denied that he ever, in any manner, interfered therewith; admitted that he had been informed that several tracts of land had been sold in Tennessee, and that all the lands in this State had been sold; declared that he was ignorant whether any lands in Tennessee remained undisposed of; and stated that, never intending to accept the trust delegated to him and Harrelson on the death of the original executors, he had made no inquiries respecting them. He denied (204) that he ever undertook the office of trustee for Lucy Daniel's children, to which he was appointed conjointly with the said Alexander and Archibald, or that he assumed or exercised dominion over the personal estate of his testator generally, or that he interfered in the administration thereof, except to the very limited extent which he afterwards set forth. The defendant knew that the confidence of the testator was principally reposed in the two original executors, one of whom was the clerk of the County Court of Caswell, and the other an eminent lawyer, conversant with matters of account, and both of them men of great skill and experience in business; and understood that he had been added to the number of executors at the solicitation of the testator's wife because of his residing more immediately in the neighborhood. He denied that he joined in the inventory, but admitted that he joined in the first sale, which occurred almost immediately after the death of the testator, on 13 November, 1817, and which amounted to the sum of $1,189. He admitted that he was present at the two subsequent sales, but declared that he took no part therein, and that they were managed wholly by his coexecutors, whom he knew to be capable, and believed to be honest; that at these sales he purchased some trifling articles, to the amount of $5.25; that Alexander Murphy purchased to the amount of $3,000, and Archibald D. Murphy to the amount of $4,823; and that neither the said Alexander nor Archibald gave security for his purchases; declared that he did not know that such purchases were illegal, but, having been advised that they were, insisted that the property so sold continued to be the property of the testator in the hands of his coexecutors, respectively; that he had no power to wrest it from them, and that he was not responsible therefor. The answer stated that he found himself charged in the account of sales with the purchase of a slave by the name of Milly, but declared that he did not buy (205) the said slave thereat, but that he bought her a few days afterwards from Archibald D. Murphy, who had purchased her at one of the sales of the testator's estate. It also admitted that the defendant had not been able to find any order of court for the sales, but declared that, at the time, he was not only ignorant whether an order had been made, but whether an order was necessary; and said that at all *Page 166 
events a sale was necessary, because otherwise a division among the grandchildren of the testator was impracticable. The answer further stated that, after the last sale, he received from his coexecutors bonds and notes of the purchases for collection, amounting to $2,900, or thereabouts; that they were placed in his hands simply for the convenience of collection, because he lived in the neighborhood of the obligors, and his coexecutors at a distance; that the amount of these, added to a hundred dollars in cash previously received by him, the trifling amount bought by him at the sales, and $521, at which price he obtained Milly by assignment from Archibald D. Murphy, made up the aggregate sum of $3,476.14 1/2, which, he averred, comprehended the whole of the personal assets of his testator, which came to his hands previously to the death of Mrs. Murphy, in 1827, on which aggregate he charged commissions at 3 per cent in his settlement with Archibald D. Murphy. He claimed to have paid debts and legacies previously to 1 January, 1819, and to have incurred charges which, added to his commissions, amounted to $1,153.45, which left a balance of assets of $2,322.69 1/2. The defendant charged that he accepted the appointment of trustee for his own children under the will; and that, upon balancing his accounts concerning the estate with his coexecutors, and substracting [subtracting] the sum which he was entitled to hold as such trustee, there was due from him to the estate of his testator on 1 January, 1819, but the sum of $521.92 1/2, for the explanation whereof he (206) referred to the settlement so made. The defendant, denying peremptorily that he ever claimed or exercised authority in selling the lands of his testator, said that, in the year 1827, having learned from Archibald D. Murphy, the surviving trustee, that sales had been made thereof to the amount of $16,200.40, to one-seventh part whereof his children, for whom he was trustee, were entitled, viz., to $2,314.34, and there being a balance due from his intestate, Mrs. Murphy, to the estate of his testator, of $2,900, or thereabouts, and a balance due from himself to the estate of $521.92 1/2, as above stated, he, on 12 May, 1827, came to a full settlement with his said coexecutor and surviving trustee, a copy whereof was annexed to the answer, whereby the said trustee and coexecutor was credited for the sum of $2,584.19 1/2 as so much paid the defendant on account of his children, and the defendant's receipt given therefor; and this defendant was credited for the sum of $2,900 as paid by him on account of Mrs. Murphy, and the same was receipted by the said trustee and coexecutor; but declared that, in truth, the respective payments aforesaid were made simply by opposing or setting off the claims against each other; and all that was actually paid was the balance of $345.80 1/2 found due upon the whole account, and which balance was then paid by him to his coexecutor. The defendant denied that this settlement or *Page 167 
payment was made with a design to avoid responsibility, but because his said coexecutor had been almost the sole manager of the estate and was recognized by all interested as such; had made settlements or advancements, in full or in part, with or to nearly all the legatees; that during the life of the said Archibald no discontent, to the defendant's knowledge, was expressed or existed in relation to his management; that he was at that time not only the acting executor and sole trustee of the testator, but trustee for his own children, for the children (207) of Lucy Daniel, and for the children of Nancy Debou; was executor of Alexander Murphy, and lawfully authorized agent of John G. Murphy and Herudon Harralson, the trustees of their respective children; and he submitted whether, under these circumstances, the said settlement with, and the payment of, said balance to the said Archibald were not correct and sanctioned by the rules of the Court. The defendant also admitted the receipt from the said Archibald, since the said settlement, of two sums, amounting to $221.42, in behalf of his children, because of their share of the purchase money and rent of a tract afterwards sold; and denied that he ever received any other of the assets that were of his testator; that he ever received any money on account of Alexander Murphy's purchases, or that the price thereof was lost through his negligence or default. The defendant further stated that in 1821 Archibald D. Murphy, from a state of unexampled credit and high reputation for capacity in the management and increase of his estate, suddenly became bankrupt; and Alexander Murphy became also insolvent, and died at the same time; that the defendant had not the power to take to himself, and was not under any obligation in consequence of these unfortunate results, to require to be surrendered to him the management of the testator's estate; that, having always declined to act as trustee for the children of Lucy Daniel, he did not seek to get into his hands any part of their portion, but that he occasionally received small sums of money wherewith to buy clothes and a few other necessaries for the complainant, Lucy Ann, who lived in his family for many years, for which he never received any compensation. He charged that this insolvency of the acting executor was perfectly known to the plaintiffs, and especially to the plaintiff Jonathan, who had read law in Mr. Murphy's office, practiced in the same courts with him, was one of his most intimate and confidential friends, became connected with him afterwards in certain mining speculations, and who, although he had been married to the plaintiff Matilda for eight or ten years before Mr. Murphy's death, never expressed any dissatisfaction at his conduct or took any steps to get the property from his control. (208) The defendant averred that Archibald D. Murphy treated the children of Lucy Daniel with great personal kindness, and made divers *Page 168 
expenditures for their education and maintenance, an account of which he had seen among the papers of the deceased; that in one of the books of Mr. Murphy there was a statement of the account between him as trustee and coexecutor of his testator and the plaintiff Jonathan, and therein there was an entry in his handwriting as follows: "By settlement with Mr. Worth in full. He has this settlement, and the payments since are credited thereon"; and the defendant charged that there had been a final settlement between the plaintiff Jonathan Worth, acting for himself, and the plaintiff Matilda, and the said Archibald D. Murphy.
The plaintiffs replied to these answers and proofs were taken by the parties, but it is unnecessary to state them, as the pleadings present all the facts necessary to a proper understanding of the case.
The first question which presents itself for our consideration is whether the defendant Dr. McAden, notwithstanding his having forborne toact as a trustee for Lucy Daniel's children, had that office imposed upon him.
If he had, it follows that an account must be taken between him and his cestui que trusts, in relation to the administration of the subject-matter of that trust. It is not alleged that he ever executed a formal renunciation or disclaimer of this trust, but it is insisted that it could not be imposed without his assent, and that he has done no act declaring that assent, or warranting any inference of such assent. We are of opinion that his probate of the will as executor was an acceptance (209) of this trust. An executor is he to whom the execution of a last will and testament of personal estate is, by the testator's appointment, confided. How far the acceptance of the office of executor maynecessarily carry with it the acceptance of trusts in relation to real property, which the testator has authorized and directed his executors to perform, it is not now necessary to determine. By this will, lands were devised to be sold, and a personal fund, consisting partly of the proceeds of these sales and partly of the personal estate of the testator, was directed to be kept for the infant children of Lucy Daniel by certain persons as trustees for those children, which same persons were by the will constituted executors. Of these, the defendant was one. Nor is it necessary to decide whether he might not, at the time of proving the will, by some solemn and authentic act, have declined the office of trustee for the children, although the inclination of our minds is *Page 169 
that this would not have been admissible. We think that as the same persons who are charged with the office of executors are also instructed by the will to act as trustees of a fund bequeathed by that will, this latter duty is imposed upon them as executors, and the acceptance of the office of executor cannot be qualified by a refusal to perform any duty which the testator has annexed to it. Mucklow v. Fuller, Jacob, 198 (4 Con. Ch. Rep., 93). But if he could have been permitted thus to have declined, we hold that an unqualified engagement to execute the will bound him to execute it fully and in every particular, as he was directed to execute it, to the extent of the powers which he derived under it. Where one who is sole executor of another dies after making a will and appointing executors, those so appointed may accept the office of executor to their immediate testator, and renounce the office of executor to his testator; but if they prove the will of their immediate testator generally, without such a renunciation, they become executors also of the first testator.
The taking of the account between the defendant as surviving trustee of Lucy Daniel's children and his cestui que trusts, under the unfortunate circumstances of this case, will be a task full of difficulties, and we cannot undertake by precise instructions to anticipate (210) and provide for all of these which may and probably will arise. Upon the account itself many subjects may be presented with more distinctness and particularity than they are now seen, and our judgments can then be formed upon them with more accuracy than at present. Such directions only will be given as we deem necessary for fixing the attention of the commissioner and the parties, upon the general principles by which the account is to be regulated and indicating the inquiries which it will be essential to make.
The defendant on the account is to be charged with the funds belonging to his cestui que trusts which ought to have come to his hands, or which did come to his hands, or which passed through them, or which had been wasted or misapplied by his cotrustees, or either of them, by and with his concurrence. Mere passiveness in not withdrawing funds out of their hands, which never had been in his, is not such a concurrence as to render him chargeable. The Court collects from the settlement between the defendant and Archibald D. Murphy, a copy whereof is annexed to the answer, that previously to the date of that settlement (12 May, 1827) there had been nodefinite appropriation of the balance in the defendant's hands of the assets of his testator (thereby stated to be two thousand three hundred and twenty-two dollars and sixty-nine and a half cents), nor of the debt due from the estate of Mrs. Murphy to the executors of his testator (which is represented as two thousand nine hundred and thirty dollars) to the children of the *Page 170 
defendant. At that time it is not to be questioned but that the situation of Mr. Murphy was desperate, and that the defendant knew that the payment of these sums to him must be attended with imminent danger to those interested in their preservation. He was the onlyresponsible trustee for the children of Lucy Daniel, as well as sole trustee for his own children. We are of opinion that he owed the same duty of protection to each set of his cestui que trusts; that he should have held on those funds for the benefit of all his cestui que trusts, and that he had not then a right, by a mere arrangement with the insolvent (211) trustee to appropriate them solely to the use of his own children. If the defendant can, he may exhibit evidence to show more fully the time and nature of this appropriation, but primafacie he is to account with the children of Lucy Daniel for their rateable share in these funds.
To ascertain the amount to which the children of Mrs. Daniel are entitled out of the personal estate of the testator, and what the defendant's liability is by reason of his and his coexecutor's administration of that estate, an account of that administration becomes necessary. In taking that account, the defendant is not to be charged because of funds which never came to nor passed through his hands, and which have been lost by the devastavit of either of his coexecutors, unless such devastavit was by and with his concurrence. The sale of the negroes belonging to the estate, without a previous order of court, was irregular; and the losses sustained by reason of negroes bought and not paid for areprima facie chargeable on all who concurred in making such sales. But if the sales ought to have been made, the mere neglect to procure an order of court does not impose this liability. The commissioners will therefore inquire whether these sales were necessary; if not, wherefore they were made, and whether the defendant concurred in making them.
The Court is of opinion that during the life of Archibald D. Murphy the defendant had no authority to interfere with the sale of the lands of his testator. These lands are by the will devised to Alexander and Archibald D. Murphy and to the survivor of them, expressly in trust to be sold. They are also by the will appointed executors, and in the same clause in which they are so appointed the testator authorizes and empowers them, or the survivor of them, to execute deeds for the lands which may be so sold. But in the event that both should die before such sale and conveyance, then a power is conferred upon the defendant and Herudon Harralson, or the survivor of them, to make such sales and conveyances, and "to execute all the trusts of the will." As this substitution is to take place only in the event that the trusts in regard to the sale and conveyance of the lands should not have been fulfilled *Page 171 
in the lifetime of either of the original trustees, the Court (212) understands this substitution to extend to all those trusts only which relate to the subject-matter, the trusts declared in relation to the lands, and that the latter are not substituted as executors in lieu of the former. When, by the codicil, the testator appoints the defendant, in addition to his two sons, and of the executors to cooperate with them in executing his will, he thereby bestows on him on other authority than that which is attached to the office of executor, and does not make him adevisee with his two sons in trust, nor confer upon him any authority concurrently with them in the disposition of the lands.
The Court is satisfied that whatever liabilities may attach to the defendant because of the mismanagement of his coexecutors and cotrustees, and of his implicit confidence in them, no imputation of fraud rests upon him. In taking each of the accounts, therefore, the commissioner is to exact no further evidence of credits for disbursements or advancements made by either of his associates than can reasonably be required of one who was not personally cognizant of them, and cannot be supposed to possess regular vouchers therefor.
An interesting question will probably arise between the plaintiffs, Jonathan Worth and wife, and the defendant, founded on the alleged settlement between Mr. Worth and the late Mr. Murphy and the transactions consequent on it. That settlement, if in existence, must be exhibited, and the commissioner will not only report it, but all the transactions connected with it, to enable the Court to pronounce whether Mr. Worth has not, according to the rules of equity, made Mr. Murphy his personal debtor, and released the defendant from the claim now sought to be enforced. The consideration of this question is distinctly reserved until the coming in of the report.
The commissioner will also inquire and report who are the persons entitled to the benefit of the bequest made to Lucy Daniel's children and which of them have attained the age of twenty-one years, and also whether any lands of the testator remained undisposed of at the death of the late Archibald D. Murphy. If any so remained, it will then be our duty to inquire what relief, if any, it may be in our power to give in relation to the sale of these lands. (213)
The defendants John M. Daniel and James M. Daniel being parties to these proceedings, are consequently interested in the accounts that may be taken; but if anything should be found due to the children of Lucy Daniel they cannot have a decree for their part of it in a case where they are merely defendants.
PER CURIAM. Direct an account.
Cited: Thompson v. Newlin, 43 N.C. 43. *Page 172